**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE NPK FERTILIZER ANTITRUST LITIGATION** | **MDL No. 3187** |

**RESPONDING DEFENDANTS' RESPONSE TO PLAINTIFF IIHAB'S MOTION TO
TRANSFER RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 4

I. Fertilizer Products and Markets. ................................................................................. 4

II. The Litigation. ............................................................................................................. 4

ARGUMENT ......................................................................................................................... 6

I. The Related Actions include Common Factual Allegations ...................................... 6

II. Transfer and Centralization of the Related Actions Will Promote
Convenience and Efficiency. ...................................................................................... 7

III. The Related Actions Should Be Centralized in the Northern District of
Illinois Before Judge Pacold or Valderrama. ............................................................ 8

  A. The Northern District of Illinois (Eastern Division) is the Appropriate
Venue. ........................................................................................................... 8

  B. Judges Pacold and Valderrama are Best Positioned to Manage the
Litigation. .................................................................................................... 12

IV. In the Alternative, the Litigation Should be Consolidated in the Northern
District of Texas before Judge Starr. ........................................................................ 14

V. Neither The Western District of Missouri Nor the District of Kansas is
Convenient or Accessible .......................................................................................... 16

VI. No Other Pending Districts are Preferable. ............................................................. 18

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Airlines, Inc., Priv. Litig.*,
    342 F. Supp. 2d 1355 (J.P.M.L. 2004)........................................................................7

*In re Atrium Med. Corp. C-Qur Mesh Prods. Liab. Litig.*
    (MDL No. 2753), 299 F. Supp. 3d 324 (D.N.H. 2017) .............................................1

*In re BP P.L.C. Sec. Litig.*,
    734 F. Supp. 2d 1376 (J.P.M.L. 2010)......................................................................15

*In re Concrete and Cement Additives Antitrust Litig.*,
    730 F. Supp. 3d 1381 (J.P.M.L. 2024).............................................................8, 12, 13

*In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    53 F. Supp. 3d 1379 (J.P.M.L. 2014)........................................................................10

*In re Cygnus Telecomms. Tech., LLC, Pat. Litig.*,
    177 F. Supp. 2d 1375 (J.P.M.L. 2001)........................................................................7

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*,
    780 F. Supp. 2d 1379 (J.P.M.L. 2011)......................................................................18

*In re Deere & Co. Repair Servs. Antitrust Litig.*,
    No. 3:22-cv-50188 (N.D. Ill. 2022) ..........................................................................17

*In re Delta Dental Antitrust Litig.*,
    509 F. Supp. 3d 1377 (J.P.M.L. 2020).............................................................1, 6, 11

*In re Delta Dental Antitrust Litig.*,
    MDL No. 2931 (N.D. Ill. 2019).................................................................................14

*In re Erie COVID-19 Business Interruption Prot. Ins. Litig.*,
    509 F. Supp. 3d 1370 (J.P.M.L. 2020)........................................................................6

*In re Eyeware Antitrust Litig.*,
    2024 WL 2956631 (D. Minn. June 12, 2024)............................................................11

*In re Generic Pharm. Pricing Antitrust Litig.*,
    2017 WL 4582710 (J.P.M.L. Aug. 3, 2017) ...............................................................8

*In re GNC Corp. Triflex Prods. Mktg. and Pracs. Litig.*,
    988 F. Supp. 2d 1369 (J.P.M.L. 2013).......................................................................14

*In re GoodRx and Pharmacy Benefit Mgr. Antitrust Litig. (No. II)*,
776 F. Supp. 3d 1346 (J.P.M.L. 2025)...................................................................7

*In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*,
658 F. Supp. 3d 1381 (J.P.M.L. 2023)...................................................................6

*In re MultiPlan Health Ins. Provider Litig.*,
MDL No. 3121 (N.D. Ill. 2024)...........................................................................14

*In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*,
122 F. Supp. 3d 1372 (J.P.M.L. 2015)...................................................................6

*In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. &*
*Prods. Liab. Litig.*,
996 F. Supp. 2d 1380 (J.P.M.L. 2014)..................................................................14

*Polifka, et al. v. The Mosaic Co., et al.*,
No. 2:26-cv-02179 (D. Kan Apr. 3, 2026)............................................................10

*In re Potash Antitrust Litig.*,
No. 1:08-cv-06910 (N.D. Ill. 2008) .....................................................................17

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
MDL No. 3037 (N.D. Ill. 2022)...........................................................................14

*Rumbold v. Nutrien AG Solutions, et al.*,
No. 1:26-cv-03051 (N.D. Ill. Mar. 18, 2026) ...................................................6, 10

*In re Salesforce, Inc. Customer Data Sec. Breach Litig.*,
2025 WL 3649301 (J.P.M.L. Dec. 16, 2025) ........................................................10

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
856 F. Supp. 2d 1350 (J.P.M.L. 2012)....................................................................7

*In re StarLink Corn Prod. Liab. Litig.*,
Nos. 01-C-6411, 01-C-6406, 01-C-7185 (N.D. Ill. 2002) ......................................17

*In re Sulfuric Acid Antitrust Litig.*,
270 F. Supp. 2d 1379 (J.P.M.L. 2003)....................................................................9

*In re Sulfuric Acid Antitrust Litig.*,
No. 03-C-4576 (N.D. Ill. 2003) ...........................................................................17

*In re Tepezza Mktg., Sales Pracs., and Prods. Liability Litig.*
(N.D. Ill. 2023).................................................................................................14

*Union Line Farms, Inc. v. The Mosaic Co., et al.*,
No. 1:26-cv-01043-SBP (D. Colo Apr. 1, 2026), Dkt. No. 30 .......................5, 6, 10

**Statutes**

28 U.S.C. § 1404........................................................................................................11

28 U.S.C. § 1407...................................................................................................1, 2, 16

28 U.S.C. § 1407(a) ..............................................................................................2, 6, 7

Clayton Act Section 7 ...................................................................................................5

Sherman Act Section 1.............................................................................................5, 6

Sherman Act Section 3................................................................................................5

Defendants CF Industries Holdings, Inc., CF Industries, Inc., and CF Industries Nitrogen, LLC ("CF"); Nutrien Ltd. and Nutrien Ag Solutions, Inc.; The Mosaic Company, Mosaic Fertilizer, LLC, and Mosaic Canada Crop Nutrition, LP ("Mosaic"); Koch Industries, LLC, Koch Ag & Energy Solutions, LLC, Koch Fertilizer Wever, LLC, Koch Agronomics Services, LLC, Koch, Inc., and Koch Fertilizer, LLC ("Koch"); Yara North America, Inc. ("Yara"); Canpotex Limited ("Canpotex"); and The Fertilizer Institute ("TFI") (collectively, "Responding Defendants")[1] support transfer and consolidation pursuant to 28 U.S.C. § 1407.  Specifically, Responding Defendants respectfully request transfer and consolidation in the Eastern Division of the Northern District of Illinois before the Honorable Martha Pacold or the Honorable Franklin Valderrama.  In the alternative, Responding Defendants request transfer to the Northern District of Texas, Dallas Division, before the Honorable Brantley Starr.

### INTRODUCTION

To date, 19 near-identical putative antitrust class actions have been filed across seven federal district courts (the "Related Actions"): five in the Northern District of Illinois (including the first case filed); two in the District of Colorado; six in the District of Kansas; three in the Western District of Missouri; one in the Northern District of California; one in the District of New Hampshire; and one in the District of Connecticut.  Each complaint alleges that Defendants violated the antitrust laws by conspiring to increase and fix prices of nitrogen, phosphate, and potassium-based fertilizers (which Plaintiffs lump together as "NPK Fertilizer").  While

---

[1]  Responding Defendants reserve all jurisdictional defenses.  *See e.g.*, *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1380 (J.P.M.L. 2020); *In re Atrium Med. Corp. C-Qur Mesh Prods. Liab. Litig.* (MDL No. 2753), 299 F. Supp. 3d 324, 329 (D.N.H. 2017).  Yara International ASA and International Fertilizer Association ("IFA") (together with Responding Defendants, "Defendants") are named in certain Related Actions, but do not join this brief, including because of jurisdictional disputes.

1

Defendants vehemently dispute those claims, that is a fight for another day.  The only questions for this Panel are *whether* to consolidate and *where*.

As to *whether* transfer and consolidation pursuant to 28 U.S.C. § 1407 are appropriate, all factors point to yes.  The Related Actions involve overlapping (and often the exact same) plaintiff classes, defendants, factual issues, legal questions, and counsel.  They are also in the same early procedural posture: no Defendant has filed a responsive pleading in any Related Action.  Transfer and centralization will thus aid "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).

The real question for this Panel is *where* the litigation should be consolidated.  Responding Defendants respectfully submit that the Eastern Division of the Northern District of Illinois is the answer for at least three reasons.  *First*, the district is convenient and centrally located for all. Plaintiffs in four cases have already requested that the Panel transfer the litigation to Chicago, in part for this very reason.  Critically, this case involves Defendants headquartered across the country and around the globe, from Norway to France to Canada.  Chicago, with its central location and two international airports, is a decidedly more convenient destination than other districts.

The parties and counsel here in the United States also have strong ties to Chicago.  Two named Plaintiffs reside in Illinois.  Most Responding Defendants have some physical presence in Illinois, and the CF Defendants are headquartered in Northbrook, Illinois—just 24 miles north of Chicago.  Most defense counsel (and some plaintiff counsel) have offices in Chicago as well. Simply put, both for those in or around the greater Chicago area—*and* those much farther away— the Northern District of Illinois is the most convenient option for consolidation.

*Second*, the Northern District of Illinois has the experience and resources necessary to handle this complex matter at an efficient pace.  While that is true for any judge in the Northern

2

District of Illinois, Judge Pacold and Judge Valderrama in particular are strong candidates as both effectively manage their dockets, have ample antitrust experience, and do not presently preside over a pending multidistrict litigation. Those factors strike the right balance between the experience necessary and the bandwidth available to take on this complex matter.

*Third*, the *IIHAB* and Kansas Indirect Purchaser Plaintiffs argue this litigation should be consolidated in a district with "close ties to the agriculture industry" because the alleged conspiracy is "directly tied to farmlands largely concentrated in the Midwest." *IIHAB* Memo. In Support of Mot. to Transfer ("IIHAB Mot.") at 2; *Matson* Resp. to IIHAB Mot. ("Matson Resp.") at 6. While those Plaintiffs lobby for courts in Missouri and Kansas on that basis, the argument applies equally—if not more so—to the Northern District of Illinois. The *IIHAB* Plaintiff's own sources show Illinois similarly tops the charts in terms of the number of farms (and in fact *surpasses* Kansas). Moreover, Illinois farms use as much or more fertilizer than any other state at issue. As Illinois has the same (if not greater) agricultural ties, and Chicago is an indisputably more convenient forum than Kansas City, the Northern District of Illinois is the right result here.

If for any reason the Panel disagrees, the Dallas Division of the Northern District of Texas is the best alternative option. Like the Northern District of Illinois, it features geographic centrality and convenience, a well-positioned jurist to take on this litigation, and strong agricultural ties. Dallas-Fort Worth Airport is second only to Chicago's O'Hare Airport for the most direct flights offered. The Northern District of Texas also has MDL experience, coupled with a track record of moving civil cases from filing to disposition quickly. Judge Brantley Starr in particular strikes the right balance of experience and efficiency to manage this litigation. Finally, *IIHAB* Plaintiff's own sources show Texas ranks ***first*** in number of farms—demonstrating that Kansas City is not in fact the "epicenter of [] agricultural issues," as these Plaintiffs claim. IIHAB Mot. at 9.

3

## BACKGROUND

### I.    FERTILIZER PRODUCTS AND MARKETS.

Three primary macronutrients are used for fertilizer around the world: nitrogen, phosphorous, and potassium (often called "potash").  Although all Related Actions lump these distinct fertilizers together, Plaintiffs acknowledge that each type "involve[s] different chemical products, different production processes, different raw material inputs, and in many cases different producers."  *Matson* Compl. ¶ 99.  Indeed, while some Responding Defendants make more than one, others do not.  For example, CF makes only nitrogen fertilizer products, while Mosaic makes phosphate and potassium fertilizer products.[2]

Hundreds of producers across more than 60 countries compete to sell fertilizer around the globe.[3]  Domestic pricing can be heavily influenced by global events.  Plaintiffs acknowledge that "world events such as the Covid-19 pandemic, fertilizer export restrictions in China, and Russia's war on Ukraine could explain some market fluctuation" for fertilizer.  *IIHAB* Compl. ¶ 86.

### II.    THE LITIGATION.

On March 4, 2026, Bloomberg reported that "[t]he Justice Department has been investigating whether several leading producers of commercial fertilizers colluded to raise prices."[4]  Since then, 19 putative antitrust class actions have been filed.

**Direct Purchaser Lawsuits.**    On March 7, 2026, Plaintiffs Jakob Stevens and Kyli

---

[2]    *Products*, CF Industries Holdings, Inc., https://www.cfindustries.com/products (last visited Apr. 6, 2026); *Products and Services*, The Mosaic Company, https://mosaicco.com/ProductsandServices (last visited Apr. 12, 2026).

[3]    *Global Fertilizer Dashboard*, USDA Foreign Agriculture Service, (Dec. 5, 2025), https://www.fas.usda.gov/data/visualization-global-fertilizer-trade-dashboard.

[4]    Josh Sisco & Illena Peng, *DOJ Probes US Fertilizer Market for Possible Price Fixing*, Bloomberg (Mar. 4, 2026), https://www.bloomberg.com/news/articles/2026-03-04/doj-probes-us-fertilizer-market-for-possible-price-fixing.

Knickerbocker Stevens (d/b/a Fire Creek Farms) filed the first complaint on behalf of themselves and a proposed class of direct purchasers of nitrogen, phosphorous, and potassium fertilizer in the Northern District of Illinois.  Since then, 14 near-duplicate direct-purchaser putative class action cases have been filed.[5]  The Direct Purchasers allege violations of Section 1 of the Sherman Act stemming from the same alleged conduct in roughly the same time period.  Certain complaints additionally allege Sherman Act Section 3, Clayton Act Section 7, and unjust enrichment claims.

**Indirect Purchaser Lawsuits.**  On March 16, 2026, Plaintiff Melinda Matson filed a class action complaint on behalf of indirect purchasers of fertilizer products in the District of Kansas. Since then, four near-duplicate indirect-purchaser putative class action cases have been filed.[6]  The Indirect Purchasers allege the same underlying facts and assert the same violations of Section 1 of the Sherman Act as the Direct Purchasers, and some also allege state antitrust, consumer protection, trade practices, and unjust enrichment claims.

**Similar Procedural Posture.**  The Related Actions are all in the early stages.  No Defendant has filed a responsive pleading in any case, and no case has progressed further than any other.  In fact, multiple courts have granted joint requests to extend deadlines to respond to the complaints, setting such deadlines to run only *after* the Panel's resolution of the pending motion to centralize.  *See, e.g.*, Order, *Union Line Farms, Inc. v. The Mosaic Co., et al.*, No. 1:26-cv-01043-SBP (D. Colo Apr. 1, 2026), Dkt. No. 30.

---

[5]  Direct Purchaser cases include: (i) Union Line Farms, Inc. (D. Colo.); (ii) IIHAB (W.D. Mo.); (iii) Michael Rumbold (N.D. Ill.); (iv) Jason Buckman Farms, LLC (W.D. Mo.); (v) Casey Carroll (N.D. Ill.); (vi) David Polifka et al. (D. Kan.); (vii) Bradley Samuelson (N.D. Cal.); (viii) Olin Leslie Click III (N.D. Ill.); (ix) Brian Miller (W.D. Mo.); (x) Long Branch Farms LLC (D. Kan.); (xi) RH Grain Farms LLC and Terry Polen (D. Kan.); (xii) JS Farms, Inc. (D. Conn.); (xiii) Blake Drohman (D. N.H.); and (xiv) David Carroll (N.D. Ill).

[6]  Indirect Purchaser cases include (i) Wendelken Farms, LC (D. Kan.); (ii) Davis Ersham Farms, LLC (D. Kan.) (which purports to bring claims on behalf of *both* direct and indirect purchasers); (iii) David Polifka et al. (D. Kan.); and (iv) Dunham Family Farms (D. Colo.).

**ARGUMENT**

Transfer and centralization to a single district under Section 1407(a) is warranted when (1) "one or more common questions of fact" exist among the cases and (2) doing so "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Both factors support transfer to the Northern District of Illinois before Judge Pacold or Judge Valderrama.

### I.    THE RELATED ACTIONS INCLUDE COMMON FACTUAL ALLEGATIONS.

The "common question" factor boils down to whether the actions arise from "a common factual core." *In re Erie COVID-19 Business Interruption Prot. Ins. Litig.*, 509 F. Supp. 3d 1370, 1373 (J.P.M.L. 2020). As the *IIHAB*, *Fire Creek Farms*, *Rumbold*, *Union Line*, *Carroll*, and Kansas Indirect Purchaser Plaintiffs have all acknowledged, the Related Actions present multiple common factual allegations. *See* IIHAB Mot. at 4-5; NDIL Grp. Resp. to IIHAB Mot. ("NDIL Grp. Resp.") at 5; Matson Resp. at 4; Union Line Resp. to IIHAB Mot. ("Union Line Resp.") at 4-5; Carroll Resp. to IIHAB Mot ("Carroll Resp.") at 3-5. For example, each case involves "determining whether the conduct caused supracompetitive pricing." *In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*, 658 F. Supp. 3d 1381, 1382 (J.P.M.L. 2023); *see also In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1382 (J.P.M.L. 2020).

In addition to sharing a common factual core, the Related Actions also raise overlapping legal issues. Each complaint primarily alleges a Section 1 Sherman Act claim. Although some cases tack on additional claims, they are based on the same core allegations as the Section 1 claims. As this Panel has made clear, "[w]here common factual issues exist, the presence of different legal theories among the actions is not a bar to centralization." *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, 122 F. Supp. 3d 1372, 1374 (J.P.M.L. 2015).

Nor does the existence of both direct and indirect purchaser actions bar centralization.

Indeed, "the Panel has frequently centralized antitrust cases involving direct and indirect purchaser claims that arise from common factual allegations." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 856 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012).

## II.    TRANSFER AND CENTRALIZATION OF THE RELATED ACTIONS WILL PROMOTE CONVENIENCE AND EFFICIENCY.

Transfer and centralization under Section 1407(a) would also promote efficiency for both the judiciary and the parties by (i) streamlining discovery, (ii) minimizing the risk of inconsistent rulings, and (iii) eliminating duplicative efforts by the parties, given the early stage of the cases.

*First*, transfer and centralization will substantially reduce the burdens of both fact and expert discovery for all parties by streamlining what will be largely overlapping document productions and depositions. For example, documents related to, procedures regarding, and witnesses with knowledge of Responding Defendants' pricing strategies will be at issue in every Related Action. Covering the same discovery with the same witnesses in different courts is plainly inefficient. *See In re Cygnus Telecomms. Tech., LLC, Pat. Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) (explaining centralization ensures "that common parties and witnesses are not subjected to discovery demands which duplicate activity . . . occurring in other actions").

*Second*, transfer and centralization will also "prevent inconsistent rulings" and promote judicial efficiency. *See In re Am. Airlines, Inc., Priv. Litig.*, 342 F. Supp. 2d 1355, 1356 (J.P.M.L. 2004). Absent consolidation, the risk here of inconsistent rulings is substantial at every stage of the case: from motions to dismiss, to the scope of party and third-party discovery, to expert admissibility and scope, through summary judgment. *See In re GoodRx and Pharmacy Benefit Mgr. Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L. 2025). The Panel has recognized that informal coordination and cooperation may not be sufficient to eliminate the potential for duplicative or conflicting discovery and inconsistent rulings, particularly when the

actions are brought by several competing counsel, as is the case here. *See In re Generic Pharm. Pricing Antitrust Litig.*, 2017 WL 4582710, at \*2 (J.P.M.L. Aug. 3, 2017). Accordingly, this factor too weighs in favor of transfer and centralization.

*Finally*, centralization now will eliminate duplication. Even where "none of the actions has advanced beyond motions to dismiss"—and here, no action has even *reached* a motion to dismiss—there is "ample scope to eliminate duplication and enhance the convenience of the parties, the witnesses, and the courts through coordinated proceedings in the MDL." *Id*.

## III. THE RELATED ACTIONS SHOULD BE CENTRALIZED IN THE NORTHERN DISTRICT OF ILLINOIS BEFORE JUDGE PACOLD OR VALDERRAMA.

### A. The Northern District of Illinois (Eastern Division) is the Appropriate Venue.

The Related Actions should be centralized before the Eastern Division of the Northern District of Illinois for three primary reasons: (i) convenience of the parties and counsel; (ii) the district's substantial relevant experience, and its capability and capacity to handle this litigation; and (iii) Illinois's direct ties to fertilizer and farming, the products and industries at issue.

*First*, the Eastern Division for the Northern District of Illinois is convenient and accessible to all parties. That is particularly important in this case given many Defendants and alleged Co-Conspirators are located not only across the country, but also around the globe. *In re Concrete and Cement Additives Antitrust Litig.*, 730 F. Supp. 3d 1381, 1382 (J.P.M.L. 2024) (choosing a district "geographically central to the involved domestic and international parties"). Purported Defendant Yara International ASA has its principal place of business in Oslo, Norway. *IIHAB* Compl. ¶ 26. Purported Defendant IFA, a global trade association, is headquartered in Paris. *Id*. ¶ 39. Both Defendants Nutrien Ltd. and Canpotex Ltd. are headquartered in Saskatchewan, Canada. *Id*. ¶¶ 13, 22. Alleged Co-Conspirators OCI N.V. and BHP Group Limited are located in Amsterdam, Netherlands, and Melbourne, Australia, respectively. *Id*. ¶¶ 47, 49.

8



As this Panel has recognized, Chicago is centrally located and easily accessible—especially for international parties and witnesses—which weighs in favor of consolidation there. *See, e.g.*, *In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (finding Chicago "an accessible and geographically central location for both the domestic and foreign . . . parties").[7]  Indeed, Chicago has two international airports, and offers many flight options to and from these international destinations.  For example, Chicago O'Hare offers multiple flights daily to Paris (IFA headquarters) and Amsterdam (OCI N.V. headquarters), whereas the Kansas City airport offers zero direct flights.[8]  Similarly, travelling from Chicago to Saskatoon (Nutrien Ltd. and Canpotex headquarters) requires only a single layover, compared to two from Kansas City.[9]

Of course, the convenience extends to U.S.-based parties and counsel, too.  Chicago is centrally located and Chicago airports offer direct flights to all major cities in which Plaintiffs' or

---

[7]  Chicago also offers plenty of lodging, with more than 25 hotels within just one mile of the Dirksen United States Courthouse.  *See Hotels Near 219 S. Dearborn Street, Chicago, Illinois*, Expedia, https://www.expedia.com/Hotel-Search (last visited Apr. 6, 2026).

[8]  *Compare Flights from Chicago O'Hare*, FlightsFrom.com, https://www.flightsfrom.com/ (last visited Apr. 6, 2026), *with Flights from Kansas City*, FlightsFrom.com, https://www.flightsfrom.com/ (last visited Apr. 6, 2026).

[9]  *Id*.

Defendants' counsel are located, and to ***all*** of the Defendants' U.S. headquarters.[10]  Some counsel and Defendants would not require a flight at all.  For example, the CF defendants are headquartered in Northbrook, Illinois, just north of Chicago.[11]  *See, e.g.*, *In re Salesforce, Inc. Customer Data Sec. Breach Litig.*, 2025 WL 3649301, at *3 (J.P.M.L. Dec. 16, 2025) (consolidating cases to N.D. Ill. because a defendant was headquartered in Chicago); *In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014) (similar).[12]  Most Defendants' counsel and many Plaintiffs' counsel have offices in Chicago as well.[13]

The Illinois connections go further still.  Plaintiffs Michael Rumbold and Bryce Baker are both located in Illinois.[14]  And most Responding Defendants have a physical presence in Illinois, too.  For example, Koch has distribution facilities throughout the state of Illinois,[15] Nutrien Ag Solutions, Inc. has a corporate sales office in Chicago and a phosphate manufacturing facility in

---

[10]  Nutrien Ag Solutions, Inc. is headquartered in Loveland, Colorado just outside of Denver. *IIHAB* Compl. ¶ 16.  Yara North America and Mosaic are headquartered in Tampa, Florida. *Id.* ¶¶ 18, 29.  Finally, Koch is headquartered in Wichita, Kansas.  *Id.* ¶ 30.  There are direct flights (multiple per day for all) between Chicago and these cities.  *See Flights from Chicago O'Hare*, FlightsFrom.com, https://www.flightsfrom.com/ (last visited Apr. 6, 2026).

[11]  *Locations*, CF Industries Holdings, Inc., https://www.cfindustries.com/whoweare/locations (last visited Apr. 6, 2026).

[12]  The Kansas Indirect Purchaser Plaintiffs acknowledge that one defendant's headquarters in a district is "sufficient reason to centralize" an MDL there.  Matson Resp. at 6.

[13]  For example, lead plaintiff's counsel in *Union Line Farms*, Adam Levitt, is based in DiCello Levitt's Chicago office.  Similarly, Gary Klinger (plaintiff's counsel in *Fire Creek Farms* and *Rumbold*) is based out of the Chicago office of Milberg, PLLC.  *Adam J. Levitt*, DiCello Levitt LLP, https://dicellolevitt.com/attorney/adam-j-levitt/ (last visited Apr. 6, 2026); *Gary Klinger*, Milberg LLC, https://milberg.com/attorney/gary-klinger/ (last visited Apr. 6, 2026).

[14]  Compl. ¶ 11, *Rumbold v. Nutrien AG Solutions, et al.*, No. 1:26-cv-03051 (N.D. Ill. Mar. 18, 2026); Compl. ¶ 23, *Polifka, et al. v. The Mosaic Co., et al.*, No. 2:26-cv-02179 (D. Kan Apr. 3, 2026).

[15]  *Locations*, Koch Fertilizer, https://kochfertilizer.com/locations (last visited Apr. 6, 2026).

Marseilles, Illinois (less than 75 miles from Chicago),[16] and a Mosaic subsidiary operates a warehouse in Pekin, Illinois.[17]  *See In re Eyeware Antitrust Litig.*, 2024 WL 2956631, at *1 (D. Minn. June 12, 2024) (considering in a § 1404 transfer motion whether a given city was "an important office location" for defendants).  In sum, given all the parties and counsel at play, no district in the country is a more convenient choice for consolidation here.

*Second*, the judges in the Northern District of Illinois manage their dockets efficiently and are experienced with multidistrict litigation ("MDL") and antitrust cases.  The court's median time to resolve civil cases—just 6.2 months—is the lowest among *any* district in which a Related Action is currently pending.[18]  That speed comes in the face of a complex docket, including MDLs. Indeed, the district closed *five* MDLs in 2025 alone—more than any other court.[19]  The district is also familiar with *antitrust* cases and MDLs in particular.[20]  In 2025 alone, 87 antitrust matters were filed in the Northern District of Illinois, far more than *all* other relevant districts.[21]

*Third*, Kansas Indirect Purchaser and *IIHAB* Plaintiffs argue that this Panel should consider where the "agricultural issues at play in this lawsuit" arise in assessing where to consolidate these

---

[16]  *Locations*, Nutrien, https://www.nutrien.com/about/our-business/locations (last visited Apr. 6, 2026).

[17]  *Locations*, Mosaic, https://mosaicco.com/North-America-Business (last visited Apr. 6, 2026).

[18]  *District Comparison*, U.S. Courts, https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison1231.2025.pdf (last visited Apr. 6, 2026); *U.S. District Court – Judicial Caseload Profile*, https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf (last visited Apr. 6, 2026).

[19]  *MDL Statistics Report – Docket Summary Listing*, U.S. Judicial Panel on Multidistrict Litigation (Jan. 5, 2026), https://www.jpml.uscourts.gov/sites/jpml/files/Recently_Terminated_MDLs-January-1-2025-January-5-2026.pdf.

[20]  *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, U.S. Judicial Panel on Multidistrict Litigation (April 1, 2026), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2026.pdf (reflecting that one third of the district's pending MDLs are antitrust cases).

[21]  *U.S. District Court – Judicial Caseload Profile*, U.S. Courts (*see supra* n.18).

cases.  IIHAB Mot. at 9; Matson Resp. at 6-7 (similar).  But this argument actually favors Illinois over Missouri or Kansas.  In 2022 alone, 43,006 Illinois farms reported using commercial fertilizers on their soil, amounting to more than 17.4 million acres treated with commercial fertilizer products.[22]  Those numbers are substantially higher than the same statistics in California (29,416 farms and ~7 million acres), Colorado (8,924 farms and ~4 million acres), Connecticut (1,734 farms and ~66,000 acres), New Hampshire (1,210 farms and ~42,000 acres), and Missouri (38,344 farms and ~9 million acres), and roughly the same as in Kansas.[23]  Indeed, even the sources the *IIHAB* Plaintiff cites for the number of farms in Missouri show Illinois toward the top of the list as well—and above Kansas.[24]  Given the substantial farming industry in Illinois—and that Chicago is a far more convenient forum than Kansas City, Denver, San Francisco, Concord, or any city in New Hampshire—the Northern District of Illinois is the best place for consolidation.

What is more, Responding Defendants are not the only ones asking this Panel to consolidate this litigation in the Northern District of Illinois.  Four Plaintiff groups have ***also*** already requested centralization in Chicago.  NDIL Grp. Resp. at 7-10; Union Line Resp. at 1; Carroll Resp. at 1.  While not dispositive, agreement between Responding Defendants and some Plaintiffs also weighs in favor of the Northern District of Illinois.  *In re Concrete and Cement Additives Antitrust Litig.*, 730 F. Supp. 3d at 1382.

**B.      Judges Pacold and Valderrama are Best Positioned to Manage the Litigation.**

While all judges in the Northern District of Illinois are qualified to oversee this litigation,

---

[22]  *Fertilizers and Chemicals Applied: 2022 and 2017 (Table 40)*, USDA, https://www.nass.usda.gov/Publications/AgCensus/2022/Full_Report/Volume_1,_Chapter_2 _US_State_Level/st99_2_039_040.pdf (last visited Apr. 10, 2026).

[23]  Illinois farms applied more fertilizer in 2022 than Kansas (43,006 vs. 29,059 farms), while Kansas had only slightly more acreage fertilized (17.4 million vs. 18.8 million acres).  *Id.*

[24]  IIHAB Mot. at 9, n.5 & 6 (Illinois in the top 5 for number of farms in the United States).

Judges Pacold and Valderrama are exceptionally good candidates.  Both have significant antitrust experience, manage their dockets efficiently, and do not have a currently pending MDL.

Judge Pacold has demonstrated superb docket management.  In fact, as of September 2025, Judge Pacold only had *one* motion that had been pending more than six months—well below the district average.[25]  As of that same date, Judge Pacold oversaw only 41 cases that had been pending for more than three years—also well below the district average.[26]  Judge Pacold also has considerable antitrust and class action experience.  Since her appointment in 2019, she has handled 27 antitrust cases and 19 class actions, making her well-qualified to oversee the Related Actions.[27]  That Judge Pacold has not yet had the opportunity to oversee an MDL also weighs in favor of her appointment here.  *See, e.g.*, *In re Concrete and Cement Additives Antitrust Litig.*, 730 F. Supp. 3d at 1382 (favoring a judge who had not yet had the opportunity to preside over an MDL).

Similarly, Judge Valderrama has also not yet had the opportunity to oversee an MDL, but is well-positioned to do so.  Like Judge Pacold, Judge Valderrama's docket management since his appointment in 2020 demonstrates that he would steer this litigation on an efficient course.  For example, as of September 2025, Judge Valderrama had only 52 cases that had been pending for more than three years, below the district average.[28]  Judge Valderrama also has notable antitrust

---

[25]  *U.S. District Courts—Report of Motions Pending over Six Months as of September 30, 2025*, U.S. Courts (Sep. 30, 2025), https://www.uscourts.gov/sites/default/files/document/cjra_8_0930.2025.pdf.

[26]  *U.S. District Courts—Report of Cases Pending More than Three Years as of September 30*, 2025, U.S. Courts (Sep. 30, 2025), https://www.uscourts.gov/sites/default/files/document/cjra_7_0930.2025.pdf.

[27]  *District Judge Martha Maria Pacold*, Lex Machina, https://law.lexmachina.com/federal-court/judge/6840716 (last visited Apr. 6, 2026).

[28]  *U.S. District Courts—Report of Cases Pending More than Three Years as of September 30*, 2025 (*see supra* n.26).  As of September 2025, Judge Valderrama had 56 motions pending longer than six months across only 30 cases.  Those motions primarily involve *cross-motions*,

13

and class action experience, overseeing 24 antitrust cases and 14 class actions since his appointment.[29]  Judge Valderrama, too, would make an excellent choice to manage this MDL.

The Plaintiffs seeking consolidation in the Northern District of Illinois ask this Panel to direct the MDL to Judges Elaine E. Bucklo, Matthew F. Kennelly, or Thomas M. Durkin.  NDIL Grp. Resp. at 13-15; Union Line Resp. at 8-9; Carroll Resp. at 13.  While all three judges are more than qualified to oversee this MDL, the Responding Defendants respectfully note that Judge Kennelly is currently managing two other MDLs, Judge Durkin is managing one other MDL, and an MDL was recently transferred from Judge Bucklo to Judge Harjani.  *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, MDL No. 3037 (N.D. Ill. 2022) (Kennelly, M.); *In re MultiPlan Health Ins. Provider Litig.*, MDL No. 3121 (N.D. Ill. 2024) (Kennelly, M.); *In re Tepezza Mktg., Sales Pracs., and Prods. Liability Litig.* (N.D. Ill. 2023) (Durkin, T.); *In re Delta Dental Antitrust Litig.*, MDL No. 2931 (N.D. Ill. 2019) (Bucklo, E., now Harjani, S.).

## IV.     IN THE ALTERNATIVE, THE LITIGATION SHOULD BE CONSOLIDATED IN THE NORTHERN DISTRICT OF TEXAS BEFORE JUDGE STARR.

Should the Panel disagree with centralization in the Northern District of Illinois, the Responding Defendants respectfully suggest that the Northern District of Texas, specifically the Dallas Division, has similar features that make it an attractive alternative option for this MDL.[30]

---

which are typically more complex and take longer to resolve.  *U.S. District Courts—Report of Motions Pending over Six Months as of September 30, 2025*, U.S. Courts (*see supra* n.25).

[29]  *District Judge Franklin Valderrama*, Lex Machina, https://law.lexmachina.com/federal-court/judge/8905366 (last visited Apr. 6, 2026).

[30]  That there is "no constituent action currently [] pending" in Texas is "no impediment to its selection as transferee district;" the Panel has selected districts with no action pending where, for example, "all the actions in [the] docket are at an early stage," the district "provides a geographically central forum" that is "convenient and accessible for the parties and witnesses," and a jurist with the "time and judicial experience to steer the litigation on a prudent course" sits in that district.  *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig.*, 996 F. Supp. 2d 1380, 1382 (J.P.M.L. 2014); *In re GNC Corp. Triflex*

*First*, Dallas is also geographically central and convenient for both the parties and counsel. Like Chicago's airports (and unlike Kanas City's), Dallas Fort-Worth Airport offers direct flights to all major cities in which Plaintiffs' counsel or Defendants' counsel are located, to *all* of the Defendants' United States headquarters, and to *more* Putative Defendants' international locations than Kansas City.[31]  What is more, at least one named Plaintiff resides in Texas, just a few hours from Dallas (*Samuelson* Compl. ¶ 9) and multiple Defendants have physical ties to the area.[32]  And by *IIHAB* Plaintiff's own logic (and sources), Texas has even *more* significant ties to this litigation than Kansas or Missouri: recent data lists Texas as the state with the *most* farms in the country.[33]

*Second*, the Northern District of Texas is also well-equipped to take on this litigation.  The district moves civil cases from filing to disposition in a median of just 5.8 months—faster than every district for which Plaintiffs advocate[34]—and has only two pending MDLs.[35]  Neither is overseen by Judge Brantley Starr, who is a particularly good candidate to manage this litigation given (i) as of September 2025, he had *zero* motions pending more than six months[36] and (ii) he

---

*Prods. Mktg. and Pracs. Litig.*, 988 F. Supp. 2d 1369, 1370 (J.P.M.L. 2013); *In re BP P.L.C. Sec. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010).

[31]  *Flights from Dallas*, FlightsFrom.com, https://www.flightsfrom.com/DFW (last visited Apr. 13, 2026).

[32]  *See, e.g.*, *Locations*, Nutrien, https://www.nutrien.com/about/our-business/locations (last visited Apr. 6, 2026) (noting Nutrien Ag Solutions, Inc. sells fertilizer at more than 45 locations across Texas, and over half of them are in the Northern District).

[33]  IIHAB Mot. at 9, n.5 & 6 (citing 2022 and 2024 data listing Texas #1 for number of farms).

[34]  *District Comparison*, U.S. Courts (*see supra* n.18); *U.S. District Court – Judicial Caseload Profile*, (*see supra* n.18).

[35]  *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, U.S. Judicial Panel on Multidistrict Litigation (*see supra* n.20).

[36]  *U.S. District Courts—Report of Motions Pending over Six Months as of September 30, 2025*, U.S. Courts (*see supra* n.25).

has not yet overseen an MDL but has significant experience with complex litigation.[37]

## V.    NEITHER THE WESTERN DISTRICT OF MISSOURI NOR THE DISTRICT OF KANSAS IS CONVENIENT OR ACCESSIBLE.

The Responding Defendants greatly respect the judges sitting in the Western District of Missouri and the District of Kansas.  But the *IIHAB* and Kansas Indirect Purchaser Plaintiffs' proposals to transfer the Related Actions to either location—when the litigation involves parties and witnesses dispersed across the nation (and for some Defendants, the world)—is less likely to further, and very well may frustrate, the convenience and efficiency goals of Section 1407.

*First*, the Responding Defendants disagree that the Western District of Missouri or the District of Kansas are a "convenient" location for this MDL.  IIHAB Mot. at 8; Matson Resp. at 10.  No Defendant is headquartered in Kansas City, and none of the Responding Defendants' primary counsel are located there.[38]  Nor are most named Plaintiffs in the pending Related Actions. Requiring the parties and witnesses to travel to Kansas City would be inconvenient, particularly when compared to Chicago.  There are *no* direct flight options to *any* of the European cities where certain Purported Defendants are based, and comparatively *far* fewer direct flight options to many Defendants' U.S. locations.[39]  For example, while there are more than *10* daily direct flight options from Chicago to Tampa (where The Mosaic Company and Yara North America are located), there

---

[37] *District Judge Brantley David Starr*, Lex Machina, https://law.lexmachina.com/federal-court/judge/6840706 (last visited Apr. 13, 2026).

[38] While one Defendant is headquartered in Wichita, Kansas Indirect Purchaser Plaintiffs are advocating for *Kansas City* for consolidation, *not* Wichita.  Matson Resp. at 10.  Wichita is particularly inconvenient for all other parties and counsel given its airport services only 14 non-stop destinations (while O'Hare services 237).  *Compare Nonstop Flights*, Wichita Airport Authority, https://www.flywichita.com/nonstop/ (last visited Apr. 6, 2026) *with Non-stop Service*, O'Hare International Airport, https://www.flychicago.com/ohare/myflight/non-stop/Pages/default.aspx (last visited Apr. 6, 2026).

[39] *Flights from Kansas City*, FlightsFrom.com, https://www.flightsfrom.com/ (last visited Apr. 8, 2026).

are only *two* from Kansas City to Tampa (and neither at convenient times).[40]

*Second*, the Northern District of Illinois has more resources to handle this litigation. Both the Western District of Missouri and the District of Kansas are significantly smaller courts, with only six active-status Article III judgeships in each (three of which are currently vacant in Kansas)—as compared to 22 in the Northern District of Illinois. Yet the Northern District of Illinois still has a shorter median time from filing to disposition for civil cases than both the Western District of Missouri and the District of Kansas.[41] Both districts also have relatively less antitrust experience, with just *eight* (Western District of Missouri) or *six* (District of Kansas) antitrust cases filed in 2025 (compared to *87* in the Northern District of Illinois).[42] And while Kansas Indirect Purchaser Plaintiffs argue that the District of Kansas has significant experience with "agricultural" MDLs (Matson Resp. at 7), the same is true for the Northern District of Illinois. *See, e.g.*, *In re Potash Antitrust Litig.*, No. 1:08-cv-06910 (N.D. Ill. 2008) (concerning one of the very fertilizers at issue here); *In re Deere & Co. Repair Servs. Antitrust Litig.*, No. 3:22-cv-50188 (N.D. Ill. 2022) (concerning the tractor repair industry); *In re Sulfuric Acid Antitrust Litig.*, No. 03-C-4576 (N.D. Ill. 2003) (concerning a component in some fertilizers); *In re StarLink Corn Prod. Liab. Litig.*, Nos. 01-C-6411, 01-C-6406, 01-C-7185 (N.D. Ill. 2002) (concerning contamination of crops based on genetically modified corn).

*Third*, neither Missouri nor Kansas has more "ties to the agriculture industry" than Illinois. Matson Resp. at 6. As explained above, Illinois has *more* farms and acres that use commercial fertilizers (43,006 farms, 17.4 million acres) than Missouri (38,344 farms, 9.4 million acres), and

---

[40]   *Id.*

[41]   *District Comparison*, U.S. Courts (*see supra* n.18).

[42]   *U.S. District Court – Judicial Caseload Profile*, U.S. Courts (*see supra* n.18).

*more* farms but only slightly fewer acres fertilized than Kansas (29,059 farms, 18.8 million acres).[43]   While Related Actions are pending in all three places,[44] given Chicago is a far more convenient venue, the scales are tipped toward the Northern District of Illinois on this front, too.

## VI.   NO OTHER PENDING DISTRICTS ARE PREFERABLE.

Although no Plaintiff has yet advocated for transfer to the remaining districts in which a Related Action is pending, Responding Defendants briefly address why none are preferrable here.

**District of Colorado**.  Centralization in the District of Colorado is not preferrable to the Northern District of Illinois.  The District of Colorado has only eight active Article III judges, one of whom already has a pending MDL.[45]   Only 32 antitrust cases were filed in the District of Colorado in 2025—a fraction of the 87 filed in the Northern District of Illinois.[46]  While Denver's airport offers more non-stop options than Kansas City, Chicago still offers more,[47] and thus remains more convenient for the parties and witnesses alike.

**Northern District of California**.  Nor is the Northern District of California a better option than the Northern District of Illinois.  The Northern District of California takes longer than the Northern District of Illinois to move civil cases from filing to disposition (7.5 median vs. 6.2

---

[43]   *Fertilizers and Chemicals Applied: 2022 and 2017 (Table 40)*, USDA (*see supra* n.22).

[44]   While the District of Kansas has the most Related Actions pending there, that "is not a particularly significant factor" (*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011))—particularly when three of those six cases are largely identical complaints brought by the *same* counsel (presumably in a thinly-veiled effort to create the *appearance* of more "unique" ties to the venue).

[45]   *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, U.S. Judicial Panel on Multidistrict Litigation (*see supra* n.20); *District Comparison*, U.S. Courts (*see supra* n.18).

[46]   *U.S. District Court – Judicial Caseload Profile*, United States Courts (*see supra* n.18).

[47]   *Compare Non-stop Service*, O'Hare International Airport, https://www.flychicago.com/ohare/myflight/non-stop/Pages/default.aspx (last visited Apr. 6, 2026) *with Nonstop Routes*, Fly Denver, https://www.flydenver.com/nonstop-routes/ (last visited Apr. 6, 2026).

18

median);[48] is presently managing far more MDLs than the Northern District of Illinois (20 vs. 12) and thus has less bandwidth to take another;[49] had far fewer antitrust cases filed in 2025 (48 vs. 87) and thus has relatively less recent experience with such matters;[50] offers fewer direct flight destinations (San Francisco and Oakland *combined* offering 176 vs. O'Hare offering 237);[51] and is located on the far end of the country whereas Chicago is centrally located.

**District of Connecticut.** The Northern District of Illinois is plainly preferable to the District of Connecticut as well. The District of Connecticut—also located on a far end of the country—is less accessible than Chicago, with only 43 non-stop flight destinations relative to Chicago O'Hare's 237.[52] The District of Connecticut also has a longer median time to resolve civil cases than the Northern District of Illinois[53] and fewer Article III judges, and thus less bandwidth to take on this litigation. The District of Connecticut's recent antitrust experience (nine cases filed in 2025) also pales in comparison to the Northern District of Illinois (87 filed in 2025).[54]

**District of New Hampshire.** Finally, the District of New Hampshire is not an appropriate

---

[48]  *U.S. District Court – Judicial Caseload Profile*, U.S. Courts (*see supra* n.18).

[49]  *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, U.S. Judicial Panel on Multidistrict Litigation (*see supra* n.20).

[50]  *U.S. District Court – Judicial Caseload Profile*, U.S. Courts (*see supra* n.18).

[51]  *Compare Non-stop Service*, O'Hare International Airport, https://www.flychicago.com/ ohare/myflight/non-stop/Pages/default.aspx (last visited Apr. 6, 2026) *with Nonstop Services from SFO,* Fly SFO, https://www.flysfo.com/nonstop (last visited Apr. 6, 2026) *and Where we Fly*, Oakland San Francisco Bay Airport, https://www.iflyoak.com/fly/wherewefly/ (last visited Apr. 10, 2026).

[52]  *Compare Non-stop Service*, O'Hare International Airport, https://www.flychicago.com/ ohare/myflight/non-stop/Pages/default.aspx (last visited Apr. 6, 2026) *with Why fly from Bradley?*, Bradley International Airport, https://bradleyairport.com/journey/search-flights/ (last visited Apr. 11, 2026).

[53]  *U.S. District Court – Judicial Caseload Profile*, U.S. Courts (*see supra* n.18).

[54]  *Id*.

19

venue for this MDL, either.  It has one regional airport that offers only 15 direct flight locations, and ***none*** to destinations east of Chicago.[55]  The District of New Hampshire also takes ***over four times longer*** (25.6 months median) than the Northern District of Illinois (6.2 months median) to move civil cases from filing to disposition.[56]  And with one MDL already pending in the District of New Hampshire[57] and only five total Article III judges (three of whom are active status), an additional MDL would likely strain already-limited resources.  The district also has far less recent experience with antitrust cases (***zero*** filed in 2025 versus ***87*** in the Northern District of Illinois).[58]

## **CONCLUSION**

For the foregoing reasons, the Responding Defendants respectfully request the Panel transfer the actions identified in the attached Schedule of Actions, as well as any tag-along cases subsequently filed, to the Northern District of Illinois before Judge Pacold or Judge Valderrama or, in the alternative, to the Northern District of Texas before Judge Starr.

---

[55]  *Where We Fly*, Manchester-Boston Regional Airport, https://www.flymanchester.com/where-we-fly/ (last visited Apr. 11, 2026).

[56]  *U.S. District Court – Judicial Caseload Profile*, U.S. Courts (*see supra* n.18).

[57]  *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, United States Judicial Panel on Multidistrict Litigation (*see supra* n.20).

[58]  *U.S. District Court – Judicial Caseload Profile*, U.S. Courts (*see supra* n.18).

Dated: April 13, 2026

/s/ *Mark A. Ford*
Mark A. Ford
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6423
Facsimile: (617) 526-5000
mark.ford@wilmerhale.com

*Attorney for The Mosaic Company and Mosaic Fertilizer, LLC*

/s/ *Heather P. Lamberg*
Heather P. Lamberg
**FRESHFIELDS LLP**
700 13th St. NW, 10th Floor
Washington, DC 20005
Telephone: (202) 210-8639
heather.lamberg@freshfields.com

*Attorney for Yara North America, Inc.*

/s/ *David C. Kiernan*
David C. Kiernan
**JONES DAY**
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (412) 875-5745
Facsimile: (415) 875-5700
dkiernan@jonesday.com

*Attorney for Nutrien Ltd. and Nutrien AG Solutions, Inc.*

Respectfully submitted,

/s/ *Christa C. Cottrell*
Christa C. Cottrell, P.C.
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
ccottrell@kirkland.com

*Attorney for CF Industries Holdings, Inc., CF Industries, Inc., and CF Industries Nitrogen, LLC*

/s/ *Richard Brosnick*
Richard Brosnick
**AKERMAN LLP**
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Telephone: (212) 880-3834
Facsimile: (212) 880-8965
richard.brosnick@akerman.com

*Attorney for Canpotex Limited*

/s/ *Michael D. Bonanno*
Michael D. Bonanno
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 13th Street NW, Suite 600
Washington DC, 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
mikebonanno@quinnemanuel.com

*Attorney for Koch Industries, LLC, Koch AG & Energy Solutions, LLC, Koch Fertilizer Wever, LLC, Koch Agronomics Services, LLC, Koch, Inc., and Koch Fertilizer, LLC*

21

*/s/ Peter G. Siachos*

Peter G. Siachos *(appearance forthcoming)*
**GORDON REES SCULLY MANSUKHANI, LLP**
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 714-2505
psiachos@grsm.com

*Attorney for The Fertilizer Institute*