**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: NPK FERTILIZER ANTITRUST LITIGATION | MDL No. 3187 |

**CONSOLIDATED REPLY IN SUPPORT OF MOVANT IIHAB PARTNERSHIP'S
MOTION TO TRANSFER RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 3

ARGUMENT.......................................................................................................................... 4

I.     The Responding Parties fail to meaningfully contest that the Western District of Missouri provides an appropriate venue for transfer. ........................................................................ 4

    A.     The Western District of Missouri is geographically central to the agricultural questions at issue....................................................................................................... 5

    B.     Kansas City's transportation infrastructure is more than adequate. ...................... 8

    C.     The Western District of Missouri has the judicial capacity and competency to serve the interests of this MDL. ........................................................................... 9

II.    Alternative venues proposed by the Responding Parties do not offer a convenience or judicial capacity that supersedes the Western District of Missouri. ................................ 12

    A.     Northern District of Illinois ................................................................................. 12

      1. Chicago does not possess the geographic convenience that certain Plaintiffs and Responding Defendants lead this Panel to believe........................................................ 12

      2. The Northern District of Illinois currently hosts twelve MDLs, while the Western District of Missouri has only two. ................................................................................. 15

    B.     District of Kansas................................................................................................. 17

    C.     Northern District of California.............................................................................. 17

    D.     District of Colorado ............................................................................................. 18

    E.     Northern District of Texas ................................................................................... 19

CONCLUSION.................................................................................................................... 20

Movant IIHAB Partnership ("Movant" or "IIHAB") respectfully submits this Reply in support of its Corrected Motion to Transfer Related Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. [Dkt. No. 2].

## INTRODUCTION

Section 1407 provides a streamlined procedure to adjudicate related civil actions prioritizing the convenience of the parties and witnesses while ensuring a just and efficient adjudication of the issues. All Responding Parties[1]—Plaintiffs and Defendants alike—agree with Movant that these cases should be consolidated. The only dispute is as to where. Some Parties lobby for Chicago and others for forums scattered across the country, from San Francisco to Chicago to Dallas to just over the Stateline of Kansas City. But the fragmented opposition to the Western District of Missouri confirms an important fact: no alternative commands anything close to a consensus. And the Responses fail to disturb the central proposition of Movant's Motion: the Western District of Missouri achieves Section 1407's purpose—with its proven judicial experience, its capacity to oversee an MDL, and the geographic forum it provides which balances

---

[1] To date, Responding Parties include: Plaintiffs Melinda Matson, Wendelken Farms, LC, and Davis Ehrsam Farms, LLC (collectively, the "Kansas Indirect Purchaser Plaintiffs") [Dkt. No. 58]; Plaintiff Casey Caroll [Dkt. No. 59]; Plaintiff Union Line Farms [Dkt. No. 60]; Plaintiff Jason Buckman Farms, LLC [Dkt. No. 62]; Plaintiff Bradley Samuelson [Dkt. No. 64]; Plaintiffs Jacob Stevens and Kyli Knickerbocker Stevens d/b/a Fire Creek Farms, and Michael Rumbold (collectively, the "Northern District of Illinois Group") [Dkt. No. 66]; Defendants CF Industries Holdings, Inc., CF Industries, Inc., and CF Industries Nitrogen, LLC ("CF"); Nutrien Ltd. and Nutrien Ag Solutions, Inc.; The Mosaic Company, Mosaic Fertilizer, LLC, and Mosaic Canada Crop Nutrition, LP ("Mosaic"); Koch Industries, LLC, Koch Ag & Energy Solutions, LLC, Koch Fertilizer Wever, LLC, Koch Agronomics Services, LLC, Koch, Inc., and Koch Fertilizer, LLC ("Koch"); Yara North America, Inc. ("Yara"); Canpotex Limited ("Canpotex"); and The Fertilizer Institute ("TFI") (collectively, the "Responding Defendants") [Dkt. No. 71]; Plaintiffs RH Grain Farms LLC and Terry Polen (the "Kansas Direct Purchaser Plaintiffs") [Dkt. No. 82]; Plaintiff David Carroll [Dkt. No. 97]; and Plaintiff Dunham family Farms [Dkt. No. 96].

the urban convenience traveling parties demand with a close connection to the rural heartland that is directly targeted—and affected—by the NPK Fertilizer market and industry.

## ARGUMENT

**I.    The Responding Parties fail to meaningfully contest that the Western District of Missouri provides an appropriate venue for transfer.**

The Western District of Missouri, centered around Kansas City, sits in the geographic heart of the nation's agricultural belt. Missouri ranks among the top five states[2] by number of farms and six of Missouri's eight neighboring states—Iowa, Illinois, Oklahoma, Kentucky, Tennessee, Kansas and Arkansas—rank among the top farmland occupied states.[3] The most recent U.S. Department of Agriculture Census of Agriculture places Missouri as having one of the highest number of farms in the country, second only to Texas.[4] And while only 23% of Texas' farmland is dedicated to crop output,[5] cropland accounts for over half of Missouri's farmland—with three out of five of the top farmland counties belonging to the Western District of Missouri.[6] As Plaintiff Jason Buckman highlights, the "top two commodities produced in Missouri are corn and soybeans"—both crops that rely on NPK Fertilizer. [Dkt. No. 62 at 7-8].

The class members affected by the alleged NPK Fertilizer scheme, including both direct and indirect purchasers, are overwhelmingly located in and around Missouri's Western District.

---

[2] U.S. Dept. of Agriculture, *2022 Census of Agriculture – Farms and Farmland*, (2022) https://www.nass.usda.gov/Publications/Highlights/2024/Census22_HL_FarmsFarmland.pdf.
[3] Farm Count by State 2026, World Population Review, https://worldpopulationreview.com/state-rankings/farm-count-by-state (last visited April 18, 2026).
[4] U.S. Dept. of Agriculture, *2022 Census of Agriculture – Farms and Farmland* (*see supra* n.2).
[5] U.S. Dept. of Agriculture, *2022 Census of Agriculture – State Profile, Texas*, (2022) https://www.nass.usda.gov/Publications/AgCensus/2022/Online_Resources/County_Profiles/Texas/cp99048.pdf.
[6] U.S. Dept. of Agriculture, *2022 Census of Agriculture – State Profile, Missouri*, (2022) https://www.nass.usda.gov/Publications/AgCensus/2022/Online_Resources/County_Profiles/Missouri/cp99029.pdf.

And the same is true for the Defendants, of which several are headquartered in Missouri's neighboring states and transact business throughout Missouri. Indeed, Multiple Respondents support the Movant's choice for consolidation in the Western District of Missouri—either as a first or alternate choice. [Dkt. No. 62] (Plaintiff Jason Buckman proposes transfer to the Western District of Missouri); [Dkt. No. 58] (Kansas Indirect Purchaser Plaintiffs propose the Western District of Missouri as an alternative forum). The Western District of Missouri is centrally located for this international antitrust litigation, and it has the case load and judicial experience necessary to handle the complexities involved.

### A. The Western District of Missouri is geographically central to the agricultural questions at issue.

This Panel has long recognized that, in cases alleging a nationwide conspiracy, "[t]he Western District of Missouri provides a geographically central forum . . . that is both convenient and accessible to the parties and witnesses," even where defendants are headquartered in neighboring states. *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, 190 F. Supp. 3d 1361, 1363 (J.P.M.L. 2016) (transferring related actions to the Western District of Missouri, despite the main defendant having its headquarters near Nashville, Tennessee because "although . . . litigation is nationwide in scope, its center of gravity is in the central portion of the country"); *see also In re Int'l House of Pancakes Franchise Litig.*, 331 F. Supp. 556, 558 (J.P.M.L. 1971) ("Since this is litigation involving a nationwide franchise system, there is some further merit in conducting pretrial proceedings from a centrally located metropolitan area such as Kansas City, Missouri.").

As this Panel has noted, the Western District of Missouri is a "geographically central district [that] will provide a readily accessible and convenient transferee forum for [a] nationwide litigation." *In re Folgers Coffee Mktg. & Sales Practices Litig.*, 532 F. Supp. 3d 1416, 1417

(J.P.M.L. 2021) (selecting the Western District of Missouri over requests for transfer to the Central District of California and Northern District of Ohio). On a national scale, the Western District of Missouri provides "logistical convenience," [Dkt. No. 58 at 10], as a central meeting point between both Kansas and Illinois Defendants as well as for Plaintiffs hailing from across the Midwest and the country, including from Missouri, Kansas, Illinois, Arkansas, Nebraska Texas, Florida, Alabama, Maryland, Michigan, Minnesota, New York, North Dakota, South Dakota, and Wisconsin.

The same logic that the Kansas Indirect Purchaser Plaintiffs point out led the Panel to select the District of Kansas for the Monsanto Genetically-Engineered Wheat litigation—because the District of Kansas was "also relatively close to Monsanto's headquarters in St. Louis, Missouri, where the majority of the common evidence is likely to be located"—applies with equal force here as Missouri sits in close proximity for not one but two Defendant headquarters with Kansas just a few blocks west and Illinois to the north. *See In re: Monsanto Co. Genetically-Engineered Wheat Litig.*, 978 F. Supp. 2d 1373 (J.P.M.L. 2013); [Dkt. No. 58 at 5]; *see also* [Dkt. No. 62 at 13]. Missouri not only shares the agricultural nexus alleged by parties in favor of centralization in Kansas and Illinois, but it also hosts a Defendant fertilizer plant and shares borders with Nebraska, Kentucky, Illinois, Iowa, and Oklahoma, other top farmland states in the country, which contain Defendant headquarters and facilities. Transfer to the Western District of Missouri will provide convenient access in all directions to collect evidence and receive parties and witnesses.

While the Panel may have other suitable forums to consider, Movant's complaint pending in the Western District of Missouri contains the broadest allegations—citing antitrust activity on the part of not only the Manufacturer Defendants also named in the Related Actions but also including allegations against trade organizations and co-conspirators which similar Related

Actions omit. These encompassing allegations weigh strongly in favor of the Western District of Missouri. *See, e.g.*, *In re Midwest Milk Monopolization Litig.*, 379 F. Supp. 989, 991 (J.P.M.L. 1974) (transferring to the Western District of Missouri because "while other concentrations of litigation exist in Illinois and Texas, the action containing the broadest allegations is pending in the Western District of Missouri."); *In re Piper Aircraft Distribution Sys. Antitrust Litig.*, 405 F. Supp. 1402, 1403 (J.P.M.L. 1975) (transferring related antitrust actions to the Western District of Missouri and reasoning that the Western District's complaint was "the most extensive in allegations and named defendants" and also "representative" of the other pending actions).

Movant acknowledges that the DOJ is running its fertilizer antitrust investigation out of its Chicago Antitrust Division Field Office. As between the three Antitrust Division Field Offices in Chicago, New York, and San Francisco, it is logical that the DOJ chose to base this investigation as close to the heart of the issues as possible. This choice only supports Movant's position that this Panel should seek to transfer this MDL to a district connected to the rural farmlands and farmers directly impacted by the anticompetitive behavior.[7] The Western District of Missouri is just that district. The Western District houses three out of five of the state's counties with the greatest amount of farmland by acre[8]—accounting for over 1,300,000 acres of farmland—which is greater than the mere one of five counties located in the Northern District of Illinois[9]. Indeed, as if to show how important this issue is for the state of Missouri and the Western District itself, it is the senior

---

[7] The DOJ Antitrust Division has field offices located in Chicago, New York, and San Francisco. *Antitrust Division Field Offices*, https://www.justice.gov/jmd/antitrust-division-field-offices (last visited April 18, 2026).

[8] U.S. Dept. of Agriculture, *2022 Census of Agriculture – State Profile, Missouri* (*see supra* n.6).

[9] U.S. Dept. of Agriculture, *2022 Census of Agriculture – State Profile, Illinois*, (2022) https://www.nass.usda.gov/Publications/AgCensus/2022/Online_Resources/County_Profiles/Illinois/cp99017.pdf.

senator from Missouri, Sen. Josh Hawley, who has been a leading force in bringing this issue to public awareness.[10]

### B. Kansas City's transportation infrastructure is more than adequate.

Much of the opposition's briefing fixates on the direct flight counts to O'Hare International Airport. And while it is, of course, true that the Chicago metropolitan area has a large number of flights both domestic and international, it is by no means unique in this regard. Further, the ability to land a direct international flight cannot be the only reason for the selection of venue, or very few MDLs would exist outside of the New York City and Los Angeles areas. Indeed, Kansas City International Airport offers direct flights to cities relevant to parties and issues in this litigation, including Tampa, Denver, and Chicago, which accommodates multiple Defendants' U.S. headquarters. Kansas-based Koch Defendants have access to Kansas City by car, where total travel time amounts to just three hours and avoids any travel delays or wait times that have become a mainstay of air travel in this country.

The opposition's emphasis on international flight paths between Chicago and Oslo, London, and Paris has little practical relevance. The day-to-day work of this MDL—document review, motion practice, depositions, status conferences—will be handled by U.S.-based counsel.

---

[10] *See* Letter from Josh Hawley, U.S. Senator, to Christpoher Bohn, President and CEO, CF Industries Holding Inc. (Mar. 12, 2026) (Missouri's senator writes to CF Industries' CEO voicing concern for the NPK Fertilizer market conditions considering "the price run-ups American farmers are facing far outpace any disruption from recent events" and "farmers have already endured historic run-ups in fertilizer prices in 2021 and 2022"); Letter from Josh Hawley, U.S. Senator, to Pamela Bondi, U.S. Atty. General (Mar. 12, 2026) (raising concerns that "American farmers are once again being slammed by sudden fertilizer price spikes" which Missouri's senator finds "especially alarming because the fertilizer market is already highly concentrated. A small number of firms dominate large segments of the domestic market for nitrogen, phosphate, and potassium."); *see also* Josh Hawley U.S. Senator for Missouri, *Hawley Sends Letters to Fertilizer Producers, DOJ Demanding Answers for Recent Price Hikes* (Mar. 12, 2026), https://www.hawley.senate.gov/hawley-sends-letters-to-fertilizer-producers-doj-demanding-answers-for-recent-price-hikes/ ("Senator Hawley sent letters to the CEOs of CF Industries Holdings Inc., Mosaic Co., Koch Fertilizer, Nutrien Ltd., and Yara International.").

The handful of occasions requiring international witnesses or parties can be managed as they would be in any forum and as is typical of cases involving international elements. In reality, Chicago does not offer direct flights to either Oslo or Saskatoon, Canada—home to Nutrien Ltd. and Canpotex—requiring a multi-leg journey from Chicago just as it would from Kansas City. Indeed, Plaintiff Dunham Family Farms concedes that Defendants Nutrien Ltd., Canpotex Limited, and Yara International would have *no* direct flight to Chicago, Denver, or Kansas City. [Dkt. No. 96 at 7].

In any event, as this Panel has recognized time and again, Kansas City offers a forum "that is both convenient and accessible." *In re Dollar Gen.*, 190 F. Supp. 3d at 1363. Indeed, England, The Netherlands, and Argentina certainly did not seem to find travel to Kansas City a barrier when these countries selected Kansas City as their base camps throughout the duration of the upcoming 2026 World Cup.[11] Indeed, FIFA's selection of Kansas City as a host city for the largest international sporting event in the world—selected over, among other locations, Chicago— suggests that accessibility is not a true reason to favor The Second City above The City of Fountains. [Dkt. No. 62 at 14]. What the Panel should consider is the location of this litigation's "center of gravity." Sitting in the heart of multiple states involved, there could not be a district more central than the Western District of Missouri.

### C. The Western District of Missouri has the judicial capacity and competency to serve the interests of this MDL.

The Responding Parties do not contest the capability of the Western District of Missouri. Though some responses levy the data of each district to indicate which is best equipped to efficiently handle this MDL, Responding Parties merely ask this Panel to compare minor statistical

---

[11] Sam McDowell, *How did Kansas City lure 3-top 10 World Cup teams? Here's the inside story*, Kansas City Star (Feb. 13, 2026, 3:59 PM), https://www.kansascity.com/sports/spt-columns-blogs/sammcdowell/article314689899.html.

variations. For example, Respondents propose that the Northern District of Illinois's time from filing to disposition of civil cases, averaging 6.2 months, substantially outperforms the 6.5-month average in the Western District of Missouri. [Dkt. No. 59 at 11; Dkt. No. 60 at 7-8; Dkt. No. 66 at 11; Dkt. No. 71 at 11]. The Panel should give little weight to a difference of approximately nine days.

In fact, multiple Respondents argue in favor of Missouri's Western District. The Kansas Indirect Purchaser Plaintiffs not only label the Western District of Missouri an "appropriate" forum which "enjoys a relatively light caseload" but also find that at least one Related Action has already been assigned to "one of the most well-equipped judges in the country to handle complex litigation," Judge Stephen R. Bough. [Dkt. No. 58 at 11]. Movant[12] joins the Kansas Indirect Purchaser Plaintiffs' assessment that Judge Bough is in a strong position amongst the judges assigned in Related Actions to lead this agricultural antitrust litigation as he "has the rare distinction of actually presiding over a complex class action and antitrust trial" and has similarly handled a recent agriculture-centered MDL. [Dkt. No. 58 at 11]; *Burnett v. National Association of Realtors*, No. 12-cv-332 (W.D. Mo.); *Smitty's/Cam2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs. and Prods. Liability Litig.*, No. 20-md-2936 (W.D. Mo.).

Similarly, Plaintiff Jason Buckman supports transfer to the Western District of Missouri because it "[w]ill [m]inimize [c]osts and [i]nconvenience" and finds Judge Bough to be "an experienced jurist both in handling MDLs generally and complex antitrust litigation specifically."

---

[12] Movant maintains its position that the case should be consolidated in the Western District of Missouri. Movant does not express which member of the Western District's bench should be assigned because Movant does not presume to guess who amongst the able and qualified jurists in the Western District of Missouri desires to receive and preside over what will, in all likelihood, be a lengthy and involved litigation. If Judge Bough does, in fact, have the ability and willingness to so preside, Movant believes he would do an admirable job in overseeing this important case.

[Dkt. No. 62 at 13]. When assessing transfer to the Western District of Missouri or the District of Kansas, this Panel has selected the Western District of Missouri over Kansas where multiple parties expressed preference as to the Western District and a specific transferee judge. *In re Cessna Aircraft Distributorship Antitrust Litig.*, 359 F. Supp. 543 (J.P.M.L. 1973) (assigning an MDL to Judge William H. Becker in the Western District of Missouri where (i) the parties were in agreement that transfer was warranted, (ii) the District of Kansas and the Western District of Missouri were "within a short driving distance of each other," and (iii) the parties expressed preference towards Judge Becker).

This Panel also often selects a transfer forum where it receives support of multiple parties, whether as their first or alternate selection. *See, e.g.*, *In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373 (J.P.M.L. 2021) (selecting the Western District of Missouri for transfer where it was supported by defendants and was the alternative choice of multiple plaintiffs, including movants). Here, Movant joins with the multiple parties who have expressed satisfaction with the litigation's consolidation in the Western District of Missouri, either as a first choice or alternative. Accordingly, this Panel should find this partial agreement among several parties as a compelling reason to proceed with transfer to the Western District of Missouri.

II.    **Alternative venues proposed by the Responding Parties do not offer a convenience or judicial capacity that supersedes the Western District of Missouri.**

A.  **Northern District of Illinois**

1.  *Chicago does not possess the geographic convenience that certain Plaintiffs and Responding Defendants lead this Panel to believe.*

Plaintiffs Casey Carroll, Union Line Farms, Inc., the Northern District of Illinois Group, David Carroll, and the Responding Defendants offer the Northern District of Illinois as the forum best-suited for transfer by citing, among other things, the location of Defendants' headquarters in proximity to Chicago and the availability of flights from Defendant locations to Chicago.

Chicago, that somber city,[13] is no doubt well-qualified to govern MDL proceedings; this panel regularly consolidates large litigation amongst the able jurists of the Northern District of Illinois's bench—which makes the fact that some of the Responding Plaintiffs felt the need to selectively enhance their arguments perplexing. The Northern District of Illinois Group, in its now withdrawn Response, suggested that Chicago would be more convenient to Wichita-based Koch Defendants because "there are no direct flights from Wichita to Kansas City, whereas there are approximately ten daily direct flights from Wichita to Chicago." [Dkt. No. 12 at 11]. To reiterate what the Kansas Indirect Purchaser Plaintiffs rightly point out, "that argument is nonsensical as it is simply a three-hour drive" from Wichita to Kansas City. [Dkt. No. 58 at 13].

Plaintiff Casey Carroll similarly argues that Chicago's international airports offer daily direct flights to multiple international cities while the Kansas City airport offers "*no* direct international flights to *any* destinations in either Canada or Europe." [Dkt. No. 59 at 9-10]. Curiously, Casey Carroll omits the fact that there are no direct flights from Oslo to Chicago, and no direct flights from Saskatoon, Canada to Chicago—two cities where it has identified three

---

[13] Saul Bellow, *The Adventures of Augie March* (1953).

Defendant headquarters. The Northern District of Illinois Group's re-filed motion likewise continues to allude that international Defendants have direct access to Chicago, concealing the reality that international travel will require multiple connections by presenting the Panel with an opportune image suggesting the existence of direct flights from Saskatoon and Oslo to Chicago where none exist:



**Northern District of Illinois to Defendant Headquarters**

[Image from Dkt. No. 66 at 8]. Movant concedes that Defendant International Fertilizer Association will have access to a direct flight from either London or Paris to Chicago, though notes that only Movant's complaint filed in the Western District of Missouri names the International Fertilizer Association as a Defendant.

Responding Defendants suggest that Chicago is convenient, among other reasons, due to the location of Plaintiffs' and Defendants' counsels' offices but cite to no case law showing that this Panel selects a transfer location based on its convivence to the attorneys. This Panel has "long held" otherwise. *In re DirectBuy, Inc., Mktg. & Sales Practices Litig.*, 682 F. Supp. 2d 1349, 1350–51 (J.P.M.L. 2010) ("We have long held that the convenience of counsel is not by itself a factor to

be considered under Section 1407 in the Panel's decision whether to order transfer or in the selection of a transferee forum for a group of actions. Only if the inconvenience of counsel would impinge on the convenience of the parties or witnesses would the convenience of counsel become a factor to be considered by the Panel." (cleaned up)).

Responding Defendants state that Illinois is convenient because certain plaintiffs reside there and "most Responding defendants have a physical presence in Illinois" [Dkt. No. 71 at 10]. But this argument is unpersuasive. Movant IIHAB Partnership and Plaintiff Jason Buckman Farms, LLC are located in Missouri; Koch has multiple distribution facilities, including a registered office, in Missouri;[14] Nutrien Ag Solutions, Inc. advertises 25 Missouri locations to consumers;[15] Nutrien houses a phosphate plant in Joplin, Missouri,[16] just over two hours south of Kansas City; The Mosaic Company conducts U.S. distribution operations in the "key geographical area" of Missouri;[17] and CF Industries operates a distribution terminal in Missouri.[18]

Responding Defendants also contend that Chicago's two international airports afford many flight options and prevent a potential additional layover required to reach Kansas City. Additionally, they point to the fact that one Defendant, CF Industries, would not have to take a flight as pointing in favor of selecting the Northern District of Illinois. This argument merely emphasizes why the Western District of Missouri is accessible and convenient—the *five* Koch Defendants based in Wichita, with at least one Koch location in Missouri, would not have to take a flight to easily reach the Western District of Missouri. Movant can understand why the bustling,

---

[14] Koch Fertilizer, LLC, Statement of Change of Registered Agent and/or Registered Office By a Limited Liability Company – Foreign, at 1 (filed on June 24, 2021).

[15] *Find a Location*, https://nutrienagsolutions.com/find-location (last visited April 17, 2026).

[16] *Locations*, Nutrien, https://www.nutrien.com/about/our-business/locations?tab=phosphate (last visited Apr. 18, 2026).

[17] The Mosaic Company, Form 10-K, at 14 (filed on Mar. 3, 2025).

[18] *Locations*, https://www.cfindustries.com/whoweare/locations (last visited April 17, 2026).

urban forum of Chicago, with its wonderful food scene and world-class nightlife, would be desirable to multi-billion dollar companies such as those run by Responding Defendants; however, it was surely foreseeable to these companies targeting the rural and geographically expansive farmlands of the Midwest that they could be drawn into litigation in the exact rural forums in which their customers reside and run their farms.

2. *The Northern District of Illinois currently hosts twelve MDLs, while the Western District of Missouri has only two.*

The Related Actions pending in the Northern District of Illinois have been assigned to Judges Elaine E. Bucklo, Matthew F. Kennelly, Thomas M. Durkin, Jeffrey I. Cummings, Jorge L. Alonso, and Andrea R. Wood.  Plaintiff Casey Carroll requested assignment of transfer to Judge Durkin, before whom her case was originally assigned. [Dkt. No. 59 at 13]. The Northern District of Illinois Group requested transfer to Judges Bucklo or Kennelly, requests which likewise correspond to the two judges assigned to the Plaintiffs in this Group's cases. [Dkt. No. 66 at 13]. The Responding Defendants requested transfer to Judges Pacold or Valderrama despite no Related Actions being currently assigned to either judge. [Dkt. No. at 12]. Movant does not contest the competency and skill of the Northern District of Illinois judiciary, but respectfully notes that this District is already managing a full MDL docket of twelve cases, including two MDLs before Judge Kennelly, both of which are  in the discovery stage of litigation, and one MDL before Judge Durkin with four bellwether trials set to proceed between August 2026 to February 2027. As of April 1, 2026, the Northern District of Illinois has twelve MDLs pending before the court while, in comparison, the Western District of Missouri has only two, neither in front of a judge assigned to any Related Action.[19]

---

[19] U.S. J.P.M.L., *MDL Statistic Report - Distribution of Pending MDLs by District*, at 2 (Apr. 1, 2026), https:// www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2026.pdf.

In their two Responses, Plaintiffs Casey Carroll and David Carroll accurately identify that the Northern District of Illinois achieved a median civil case resolution rate of 6.2 months in 2025, but this data is inconsequential to a comparison between the speed of the Northern District of Illinois and the Western District of Missouri, where the median civil case resolution rate was similarly 6.5 months.[20] [Dkt. No. 59 at 11]; [Dkt. No. 97 at 6]. The Panel should instead consider the data spanning across six years, where the average 12-month median civil case resolution rate rises to 9.0 months for the Northern District of Illinois but remains consistent at 7.0 months in the Western District of Missouri.[21] Next, both Plaintiff Casey Carroll and Plaintiff David Carroll direct the Panel to consider another data point found in the same analysis (the U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics), which each Plaintiff alleges identifies that the Northern District of Illinois' median civil case time to trial in 2025 was 24.3 months. [Dkt. No. 59 at 11]; [Dkt. No. 97 at 6]. Movant can find no such data in the document cited by Casey Carroll; instead, it indicates the median time in months from filing to trial in a civil case in the Northern District of Illinois was *52.5* months—nearly double what Carroll presented to the Panel and double the median time of 27.0 months in the Western District of Missouri.[22]

In the interest of efficient and speedy resolution of the alleged NPK Fertilizer anticompetitive behavior before this Panel—a time-sensitive issue which will continue to impact the American farmers' livelihoods and, in turn, our country's welfare—the Movant respectfully proposes that the Western District of Missouri is better suited to take on the complex and demanding work of the NPK Fertilizer MDL.

---

[20] U.S. District Courts - *Combined Civil and Criminal Federal Court Management Statistics* (December 31, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf.
[21] *Id.*
[22] *Id.*

### B.  District of Kansas

The District of Kansas is not a more convenient choice than the Western District of Missouri. Kansas Direct Purchaser Plaintiffs ask this Panel to "centralize this litigation where Koch is headquartered" in front of Judge Melgren, which they fail to explicitly identify as the District Court of Kansas' Wichita branch. Here, multiple parties have exhaustively raised concerns for geographic convenience, especially as it relates to travel, yet the Kansas Direct Purchaser Plaintiffs propose transferring this case to a location that has a national airport with merely sixteen nonstop flights.[23] The Kansas Direct Purchaser Plaintiffs' Response fails to explain how centralization in Wichita will enhance geographic accessibility. To the extent that the Kansas Direct Purchaser Plaintiffs support proceeding in the District of Kansas' Kansas City branch, they fail to explain what advantages moving just across the Missouri/Kansas state line would provide to the litigation. Instead, Kansas Direct Purchaser Plaintiffs suggest that the Western District of Missouri has "no connection to any defendant in this litigation," and more specifically, that the District has "no [Defendant] facilities." While irrelevant, it also fails to acknowledge Nutrien's phosphate facility in Joplin, Missouri.[24] The Western District of Missouri is connected to the central concerns of the litigation, and Defendants maintain active ties to the District with fertilizer facilities and points of sale, and actively target consumer farmers the Western District of Missouri. The Western District of Missouri remains a superior choice for transfer.

### C.  Northern District of California

The Northern District of California is not a convenient or accessible location for transfer. The Northern District of California is currently overseeing twenty MDLs, far more than any other district under this Panel's consideration for transfer and ten times more than the Western District

---

[23] https://www.flywichita.com/nonstop/ (last visited April 18, 2026).
[24] *Locations*, Nutrien (*see supra* n.15).

of Missouri. [25] The Northern District of California is not geographically central to agricultural issues that disproportionately impact the Midwest region of the country and the District is likewise not best suited to provide the judicial resources needed to efficiently resolve this litigation. Movant joins other Responding Parties in their resounding disapproval of transfer to the Northern District of California. [Dkt. No. 62 at 15]; [Dkt. No. 66 at 13]; [Dkt. No. 71 at 19]; [Dkt. No. 82 at 5-6]; [Dkt. No. 60 at 7].

### D.  District of Colorado

The Panel should not transfer the MDL to the District of Colorado as it is neither more geographically convenient for parties and witnesses nor will it provide greater judicial efficiency than the Western District of Missouri. In its own motion for transfer, Plaintiff Union Line Farms argues that the Panel should prioritize the average case length from filing to disposition, contending that the Northern District of California should be excluded where the average time of 7.5 months is slower than its first choice, the District of Northern Illinois. [Dkt. No. 60 at 7, 10]. Later, however, Plaintiff Union Line Farms argues that the Panel should consider the District of Colorado in the alternative. Yet the District of Colorado's average case length from filing to disposition is *also* 7.5 and, under Union Line Farms' own reasoning, would not be a suitable transfer venue.[26]

Geographically, Colorado falls outside of the "Corn Belt" (the Midwestern states of Missouri, Illinois, Indiana, Iowa, Michigan, Minnesota, Ohio, and Wisconsin) which the U.S. Department of Agriculture considers to be "one of the most intense areas of agricultural production

---

[25] U.S. J.P.M.L. – *MDL Statistic Report - Distribution of Pending MDLs by District* (*see supra* n.18).
[26] U.S. District Courts - *Combined Civil and Criminal Federal Court Management Statistics* (*see supra* n.19).

in the world."[27]  Movant agrees with Union Line Farms' proposition that the interests of Section 1407 would be best served by selecting an "underutilized district" over the active docket currently present in the Northern District of Illinois, but the Western District of Missouri remains the superior choice of underutilized district because like in *Archery Products*, as is the case here, more parties have collectively identified the Western District of Missouri as a first or alternate choice of transfer. *In re Archery Products Antitrust Litig.*, 808 F. Supp. 3d 1412, 1414 (J.P.M.L. 2025); [Dkt. No. 60 at 10]. Ultimately, Colorado's distanced location from the central issues to this lawsuit and lower collective support among Responding Parties eliminate it as a convenient location and this Panel should not transfer the MDL to the District of Colorado.

### E.  Northern District of Texas

Responding Defendants suggest this Panel should transfer this MDL to the Northern District of Texas, where no Related Actions have been filed, and in front of a judge that the Defendants admit is without prior experience managing an MDL. [Dkt. No. 71 at 15-16]. Responding Defendants argue that Texas has more ties to this litigation than Missouri because it has the most farms in the country. [Dkt. No. 71 at 15]. In reality, a mere 23% of Texas' agricultural sales come from crops—the output dependent on NPK Fertilizer—while the majority of sales are derived from livestock, poultry, and products.[28]  Over half of Missouri's agricultural sales are derived from crops.[29] Furthermore, none of the top five farmland counties in Texas fall into the

---

[27] U.S. Dept. of Agriculture – *Agriculture in the Midwest*, https://www.climatehubs.usda.gov/hubs/midwest/topic/agriculture-midwest# (last visited April 18, 2026).

[28] U.S. Dept. of Agriculture – *2022 Census of Agriculture – State Profile, Texas* (*see supra* n.5) (identifying the Top Counties by Land in Farms as Pecos, Hudspeth, Presidio, Brewster, and Webb counties).

[29] U.S. Dept. of Agriculture – *2022 Census of Agriculture – State Profile, Missouri* (*see supra* n.6) (identifying the Top Counties by Land in Farms as Vernon, Macon, Bates, Saline, and Stoddard counties).

jurisdiction of the Western District of Texas.[30] Three out of the five top farmland counties in Missouri fall within the Western District's jurisdiction.[31] The Western District of Missouri remains the superior choice for transfer of this MDL.

### CONCLUSION

For the foregoing reasons, Movant IIHAB Partnership respectfully requests the Panel grant the Movant's request to transfer the Related Actions to the Western District of Missouri, as well as any tag-along case that may be subsequently filed, and in assigning a transfer judge, Movant suggests that the Panel use its best judgment but agrees that the Honorable Stephen R. Bough would be an admirable selection.

Dated: April 20, 2026

Respectfully submitted,

By: */s/ Benjamin J. Widlanski*
Benjamin J. Widlanski (Fla. 1010644)
Brandon M. Sadowsky (Fla. 1052643)
Lindsey E. Graham (Fla. 1069593)
**KOZYAK TROPIN THROCKMORTON LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
Tel: (305) 372-1800 / Fax: (305) 372-3508
bwidlanski@kttlaw.com
bsadowsky@kttlaw.com
lgraham@kttlaw.com

By: */s/ Gene P. Graham, Jr.*
Gene P. Graham, Jr. (Mo. 34950)
Bryan T. White (Mo. 55805)
**WHITE, GRAHAM, BUCKLEY, & CARR, LLC**
19049 East Valley View Parkway, Ste. C
Independence, Missouri 64055
Tel: (816) 373-9080 / Fax: (816) 373-9319
ggraham@wagblaw.com
bwhite@wagblaw.com

---

[30] U.S. Dept. of Agriculture – *2022 Census of Agriculture – State Profile, Texas* (*see supra* n.5).
[31] U.S. Dept. of Agriculture – *2022 Census of Agriculture – State Profile, Missouri* (*see supra* n.6).

20

By: */s/ Joseph R. Saveri*
Joseph R. Saveri (Cal. 130064)
Diane S. Rice (Cal. 118303)
Cadio Zirpoli (Cal. 179108)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Tel: (415) 500-6800 / Fax: (415) 395-9940
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
drice@saverilawfirm.com

By: */s/ Clayton A. Jones*
Clayton A. Jones (Mo. 51802)
**CLAYTON JONES, ATTORNEY AT LAW**
P.O. Box 257 405 W. 58 Hwy.
Raymore, Missouri 64083
Tel: (816) 318-4266 / Fax: (816) 318-4267
clayton@claytonjoneslaw.com

*Attorneys for Movant/Plaintiff,*
*IIHAB PARTNERSHIP*

## CERTIFICATE OF SERVICE

In accordance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I, Benjamin J. Widlanski, hereby certify that a copy of the foregoing Reply and this Proof of Service, were electronically filed with the Clerk of the Court through the CM/ECF System and served on all parties via ECF, email or First Class U.S. Mail.

By: */s/ Benajamin J. Widlanski*
Benjamin J. Widlanski

21